## COMMONWEALTH LIFE INS. CO. v. COOPER.

(Division A.   Feb. 8, 1937.   Suggestion of Error Overruled March 22, 1937.)

[172 So. 314.   No. 32401.]

Wells, Wells & Lipscomb, of Jackson, for appellant.

Percy M. Lee and O. B. Triplett, Jr., both of Forest, for appellee.

Argued orally by **Hubert Lipscomb**, for appellant, and by **O. B. Triplett, Jr.**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The question involved in this case is whether or not a life insurance policy issued by the Commonwealth Life Insurance Company on the life of James Lamar Cooper, the son of the beneficiary, Mrs. A. J. Cooper, was constructively delivered to the insured by the insurer, and thereby a contract of insurance was created.

Reverend A. J. Cooper had moved from Clinton, Mississippi, to Fabens, Texas, a short time before the transaction here involved. J. W. Gray, also a minister, lived in Jackson, Mississippi, and was a soliciting agent of the Commonwealth Life Insurance Company, the appellant here, under the immediate supervision of Robert Gandy, general agent of the insurance company in Mississippi. James Lamar Cooper was the son of Rev. and Mrs. A. J. Cooper, and was attending school in Clinton, Mississippi, when his parents moved to Texas. At the time the application for the life insurance policy involved here was signed, he had just arrived in Texas. The two ministers and Lamar met in Fort Worth at a general convention of their church. They were old friends. Gray solicited A. J. Cooper to take out an insurance policy on the life of his son Lamar. After hearing the representations of the contract of insurance made by the agent, Lamar, at the instance of his father and the agent, signed an application addressed to the insurance company for a $1,000 life insurance policy, the same to be a "20 Year Pay Policy with All the Benefits." This application was dated "Jackson, Mississippi, May

25, 1934," was received by the insurer at its main office in Louisville, Kentucky, and on June 1st it issued its policy for said amount, with premiums as stated in the application. The insurance company admitted on the trial of the case that the policy so issued was a "20 Year Pay Policy with All the Benefits." The appellant mailed this policy with others to Robert Gandy, its general state agent, who had it delivered to the soliciting agent, J. W. Gray. He retained the policy until June 23d, when he directed his stenographer to mail it, with a letter written by him, to Lamar Cooper. The substance of the letter was that the policy was being mailed to Lamar Cooper to be retained by him on condition that he was able to pay for it, and that the policy was in accord with his application.

A. J. Cooper testified that neither he nor Lamar ever received the life insurance policy, nor the letter accompanying it, nor did they hear from Gray until about November 1st of that year, when, according to Cooper, Gray wrote to the effect that he had mailed him the policy long ago; that he (Gray) had paid the premium thereon and was surprised that Cooper had not repaid him the amount of the premium, and requested payment therefor. Cooper responded to this letter that he had never received the policy, nor heard from Gray, and requested Gray to forward the policy to him and he would pay the premium. He also testified that at the time the application was made he told Gray, the agent, that he would not be able to pay for the policy promptly, that Gray told him that he could have sixty days, or even six months, in which to pay the premium, that he (Gray) would pay it, and that he (Cooper) then obligated himself to pay for a policy like the one he had applied for; that the policy was to be forwarded to him, and he was obligated to pay therefor if he and Lamar found the policy delivered to him was like the one applied for, and if it was not, then he (Cooper) was to return it within ten days.

Gray's testimony was in conflict with that of Cooper.

He testified that Cooper, the father of Lamar, did not agree to obligate himself to pay the premiums on the policy. This issue of fact was submitted to the jury as to the liability of the insurer, and was decided in favor of the beneficiary of the insured, and judgment was entered accordingly.

On November 20, 1934, Gray responded to Cooper's letter by telling him the policy had evidently been lost, and that he was inclosing an application and would try to get a new policy upon receipt of the signed application. To this letter Cooper did not respond. In the application, and in the policy of insurance issued, there was a general statement that the policy was not to be in force and effect unless and until it was delivered to the insured while in good health and the first premium thereon had been paid. When the policy was mailed from the main office, no instructions accompanied it to the general agent, nor was any special instruction given to the solicitor Gray by Gandy, the general agent, although Gandy testified that it was to be delivered by Gray only upon compliance of the insured with the conditions stated in the application and the insurance policy.

On the date of the receipt of the policy by Gandy, and on the date the stenographer was directed to mail it, June 23, 1934, Lamar Cooper was in good health. On July 28, 1934, he was stricken with appendicitis, had an operation therefor, and thereafter had four or five major operations and several minor ones, but from July 28, 1934, until his death on April 26, 1935, his condition as to health was desperate.

In 1935, before his death, Lamar received a letter of congratulations from the home office of the insurer on the fact that it was his birthday. Appellant also sent Lamar a premium notice dated June 1, 1935, which was received by A. J. Cooper after Lamar's death. After the receipt of the birthday letter and the notice of the second premium, Cooper advised Gray of the death of his son and also sent a copy thereof to the main office at Louis-

ville, Kentucky, and requested necessary papers on which to make proofs of death. The insurer declined to furnish such papers and denied liability.

The evidence shows without dispute that the first premium on the policy was never paid by the Coopers or any one else. The agents of the company explained that the birthday letter and the notice of the second premium were sent out by mistake.

The only contention presented to us for decision by the appellant is that the court below erred in not granting it a peremptory instruction. Appellant argues that the instruction should have been granted because, accepting Cooper's version of the facts, as found by the jury, there was only a conditional constructive delivery of the policy, based upon Cooper's testimony that if the policy was the one applied for, he was obligated to pay the premium thereon, but if he found the policy was not the one applied for, he should have the right to return it within ten days. The record does not disclose any custom of this company as to waiving payment of the first premium, nor does it show that the insurer, or its agent Gray, ever solicited any other business in Texas.

Waiving the question raised in the briefs as to whether or not this case is to be solved by the laws of Texas, Mississippi, or Kentucky, and further waiving the question of whether or not the soliciting agent who took an application in Texas had authority to waive payment of the first premium, and assuming that the alleged contract is solvable under the laws of this state, the controlling question in the case is whether or not an unconditional contract ever arose between Cooper, the father who acted for the insured, and Gray, the agent of the company. We think we are compelled to answer the question in the negative—that the minds of these parties never met. The testimony of Cooper shows that he and Lamar reserved to themselves the right to inspect the policy and determine for themselves whether or not they would become obligated to pay the premiums, quoting the lan-

guage of Cooper: "The agreement was that he (Gray) was to write this application, receive the policy, and send it to Lamar or to me. . . . Should the policy fail to be like the policy that we made application for we had the privilege of returning said policy within ten days." In other words, if the policy was like the one they applied for, they would become obligated to pay therefor, but if it was not, they would inspect it and return it within ten days. The word "if" as used here implies a condition. It is true that Cooper now says that the copy of the policy offered in evidence was exactly what he and Lamar had applied for. But this testimony must be viewed in the light of the developments—the insured, Lamar, had died and a suit was pending. The question is not what he is willing now to say was the binding contract but what was the binding agreement then. Insurance policies contain many clauses, and in our opinion, by the alleged agreement, as testified to by Cooper, he left himself free to accept or reject the policy when tendered to him. He and Lamar reserved the right to inspect, and to decide for themselves whether the policy was as applied for, and if not to return it to Gray within a specified time, and if they did return it there was to be no obligation on their part to pay the premium.

Under these circumstances we think the final question is whether or not the insurance company could have maintained an action on this oral contract against Cooper for the premium, and we think the condition imposed, as testified to by Cooper, would force the court to answer that Cooper could not be held liable, unless and until he had the opportunity to inspect the policy and the right to determine for himself whether or not it was the one he applied for. To hold otherwise would be to say that the insurance company, or its agent Gray, could determine that question. That holding would be unsound and unfair to one seeking to make a contract for insurance by which he was to be bound to pay the premiums.

The minds of the parties here never met in contract, and there was never an unconditional constructive delivery.

Let it not be understood that we are holding that there could not be a constructive conditional delivery of a policy of insurance. That question is not before us. The condition here was not complied with, and the policy never became effective as a contract of insurance.

We cannot close this opinion without stating that Cooper's whole course of action reveals to us that he avoided assuming liability for the premium to the extent that he never paid a cent at any time either to Gray, the agent, or to the insurer. Our eyes cannot remain closed to the fact that he contended that the policy he proposed to purchase was to contain ''all the benefits.'' It seems to us that ''all the benefits'' is the broadest and most comprehensive language that could have been used in this connection. Nowhere does he contend that he delegated to Gray, or to any one else, the power to determine this important phase of the contract for him; he reserved this power to himself. ''All the benefits'' might properly mean many different things to laymen or experts, and intelligent men could easily differ thereon. Viewing the case in the most favorable light for appellee, Cooper must have unconditionally bound himself to pay the premium within some definite time. It is obvious that a suit could not have been maintained by the insurer against Cooper here for this premium on his evidence.

Reversed, and judgment here for appellant.